1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

INES H.O.[1],

12

Petitioner,

No. 1:25-cv-01878-TLN-JDP

13
14

v.

**ORDER**

15

CHRISTOPHER CHESTNUT, et al.,

16

Respondents.

17
18

This matter is before the Court on Petitioner Ines H.O.'s ("Petitioner") Motion for a

19

Temporary Restraining Order ("TRO").  (ECF No. 8.)  For the reasons set forth below,

20

Petitioner's Motion is GRANTED.

21

///

22

///

23

///

24
25
26
27
28

---

[1]     As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only her first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2        In November 2022, Petitioner was trafficked into the United States after fleeing from

3    domestic and gender-based violence in Peru.  (ECF No. 8 at 3.)  Petitioner was placed into

4    removal proceedings and released on her own recognizance to file an application for asylum.

5    (*Id.*)  In July 2025, Petitioner was detained without notice, a hearing before an immigration judge,

6    or a determination as to whether she posed a flight risk or a danger to public safety.  (*Id.* at 4.)

7        Prior to her detention, Petitioner was employed as a housecleaner, formed relationship

8    with people in the United States, and provided for her children, including a child who suffers

9    from a terminal illness.  (*Id.* at 8.)  Petitioner has never been convicted of a crime.  (*Id.* at 21.)

10       Petitioner has been detained for nearly five months without a hearing.  (*Id.* at 7.)   On

11   December 12, 2025, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)  On

12   December 20, 2025, Petitioner filed the instant TRO.  (ECF No. 8.)

13   **II.    STANDARD OF LAW**

14       For a TRO, courts consider whether Petitioner has established: "[1] that [s]he is likely to

15   succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of

16   preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that an injunction is

17   in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner

18   must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v.*

19   *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court

20   may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A

21   stronger showing on the balance of the hardships may support issuing a TRO even where the

22   petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also

23   shows that there is a likelihood of irreparable injury and that the injunction is in the public

24   interest."  *Id.* Simply put, Petitioner must demonstrate, "that [if] serious questions going to the

25   merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in

26   order to succeed in a request for a TRO.  *Id.* at 1134–35.

27   ///

28   ///

2

**III.    ANALYSIS**

  A.  Likelihood of Success on the Merits

  Petitioner has established a likelihood of success on her due process claim.  The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings.  *Id.* at 693–94.

  Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

  As for the first step, the Court finds Petitioner has raised serious questions as to whether she has protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  As stated, Petitioner was released on her own recognizance in November 2022. (ECF No. 8 at 3.)  For more than two years, she built a life and established a community in Turlock, California.  (ECF No. 8 at 17.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in her continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

  As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

1  of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

2  the function involved and the fiscal and administrative burdens that the additional or substitute

3  procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

4  forth below, the Court finds Petitioner has established her due process rights were likely violated.

5        First, Petitioner has a substantial private interest in remaining free from detention.  As

6  discussed above, Petitioner was out of custody for over two years and had built a life in Turlock.

7  (ECF No. 8 at 11.)  Despite that, Petitioner has now been detained for over six months without

8  being afforded a hearing.  (*Id.*)  Accordingly, this factor weighs in favor of finding Petitioner's

9  private interest has been impacted by her detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-

10  01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

11        Second, the risk of erroneous deprivation is considerable given Petitioner has not received

12  any bond or custody redetermination hearing.  "Civil immigration detention, which is nonpunitive

13  in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the

14  community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at

15  *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted).  Petitioner has no criminal

16  history.  (ECF No. 8 at 14.)  Further, Petitioner attended all of her supervisory check-ins and

17  monitoring prior to her phone being stolen.  (*Id.* at 14–15.)  After her phone was stolen, Petitioner

18  replaced her phone and immediately resumed ICE check-ins.  (ECF No. 1-6 at 1.)  She also

19  willingly presented herself to an Immigration and Customs Enforcement office at her next

20  scheduled date.  (ECF No. 8 at 14–15.)  Based on the record before it, the Court finds there is a

21  serious likelihood Petitioner will be erroneously deprived of her liberty interest.  Moreover,

22  without any procedural safeguards to determine whether her detention was justifiable, the

23  probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

24        Finally, the Government's interest is low, and the effort and cost required to provide

25  Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

26  TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  As this Court has stated, it would

27  be less of a fiscal and administrative burden for the Government to return Petitioner home to

28  await a determination on her asylum case than to continue to detain her.

4

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process – a hearing to determine whether her detention was warranted. Accordingly, with respect to her due process claim, Petitioner has shown she is likely to succeed on the merits.

### B.    Irreparable Harm

Petitioner has also established she will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for nearly five months and has been separated from her community. She is unable to support her family including a child with a terminal illness in need of medical care. Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor, because the Government faces no hardship. First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors also weigh in Petitioner's favor. Therefore, the Court GRANTS Petitioner's Motion for a TRO. (ECF No. 8.)

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1.    Petitioner's Motion for a Temporary Restraining Order (ECF No. 8) is GRANTED;

2.    The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

3.    Petitioner Ines H.O. shall be released immediately from Respondents' custody;

4.    Respondents are enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have his counsel present.

5.    Respondents are ordered to show cause why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order.  Respondents shall file responsive papers by **Monday, December 29, 2025.**  Petitioner may file a reply, if any, by **Monday, January 5, 2026, by 12 p.m.**  If the parties agree upon a less demanding briefing schedule, the Court will consider the parties' proposal.  The parties shall indicate in their briefing whether they request a hearing.  Fed. R. Civ. P. 65(b)(3);

6.    Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order by 3:00 p.m. on December 23, 2025.  Fed. R. Civ. P. 65(b)(4).

7.    The Clerk of Court is directed to update the docket to only list Petitioner's first name and last initials.

//

//

IT IS SO ORDERED.

Date: December 22, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE